*Rogers, Rowley & Rockwell,* for plaintiff in error.

*Musser, Kohler & Mottinger,* for defendant in error.

---

### INJURIES RESULTING FROM A DEFECTIVE SIDEWALK.

[Circuit Court of Lucas County.]

CITY OF TOLEDO v. LENA FULLER.

Decided, March 4, 1905.

*Street—Existence of, Sufficiently Proved, When—Negligence—Questions as to, in Going upon a Defective Sidewalk—Degree of Care Required—Contributory Negligence as Suggested by Plaintiff's Own Testimony—Verdict for $1,000 for Personal Injury not Excessive, When.*

1. In a suit for personal injuries resulting from a fall on a defective board-walk located on what is designated in the petition as Sycamore street, to which only a general denial was interposed, the existence of such a street is sufficiently established, where it appears from the evidence that the way had long been used as a street, and that it was known as Sycamore street, and houses were built upon it, and no evidence was offered and no suggestion made that it had not been accepted, notwithstanding as a matter of fact it was not an accepted and dedicated street.

2. One is not bound to leave a sidewalk and go into the roadway simply because of his knowledge that the walk is out of repair, and he is not chargeable with contributory negligence where the evidence shows that while on the walk he conducted himself as an

ordinarily prudent person would do under the same or similar circumstances.

3. When an uneducated woman in ordinary life, when asked on cross-examination whether she exercised the same care in walking upon the walk where she was injured that she would have done had she been upon a walk known to be in good repair, replied in the affirmative, her response will not be regarded as sufficient to show she was guilty of negligence in walking upon the defective walk.

4. A verdict of $1,000 in favor of a woman thus injured is not excessive, where the injury consisted of a broken elbow, which has caused her great pain and will prevent her ever straightening her arm or opening or closing her hand, and as a consequence she has become dependent upon charity; and the fact that she is being supported in an infirmary at public expense does not deprive her of her right to recover.

HULL, J.; HAYNES, J., and PARKER, J., concur.

Error to Lucas Common Pleas Court.

This action was brought in the court below by Lena Fuller to recover damages for a personal injury which she claims to have sustained on account of the negligence of the city in regard to a certain sidewalk, which she says was on "Sycamore street." Her claim is, that the boards of the sidewalk were loose; that while walking over it, towards evening, but while it was still daylight, with another who stepped upon and tipped up a loose board, she was tripped and fell, injuring her arm and other parts of her body. On the trial below she was awarded a verdict of $1,000. Judgment was entered upon this verdict, and it is to in this court.

It is claimed by the city, first, that there was no such street at the place where she alleges she was injured; and the evidence does not show that there is any such street as "Sycamore street," as it was called by the plaintiff, and that question may be considered first; for, if there is no such street and no liability on the part of the city to keep it in repair, that, of course, is the end of the case. There were no witnesses called on the part of the plaintiff to testify that the place where she fell was a part of the street or that it ever had been dedicated as a street or established as such by the city. It was alleged in her petition that she fell on "Sycamore street." That was denied, along with the other allegations of the petition, by a general denial—

there is no specific denial in the answer of the allegation in regard to the street. The case was tried as though there was no question about this being a street and so tried by both plaintiff's and defendant's counsel.

Witnesses were asked about the street—witnesses for the plaintiff—and were cross-examined by counsel for the city as though it was an admitted fact. Almost the first question asked of Mrs. Fuller, the first witness, when she went upon the witness stand, was: "Where do you live?" And her answer was: "On Sycamore street." And when it came to the cross-examination she was asked by counsel for the city: "Now, Mrs. Fuller, you were living down on Sycamore street, weren't you?" And her answer was, "Yes, sir." And many questions of the same character were asked by witnesses, by both sides, assuming that the place where she fell was in a street and that street was Sycamore street. Witnesses for the plaintiff were asked these questions, and when cross-examined by counsel for the city the same assumption is made in regard to this street.

Again, on cross-examination of Mrs. Fuller, she was asked: "In going back to your house it was necessary for you to go up to Sycamore street from Summit?" and she answered that it was. And on page seven of the bill of exceptions: "And before you lived there, you used to be on Sycamore street, quite a bit, didn't you?" To which she answers: "Not very much." And the same method is followed in the examination of defendant's witnesses when they were called. A witness named Daniel Reams was called by the city, and the first question put to him is: "You live on Sycamore street?" And he answers that he does. He is asked if he has lived there some years, and he answers that he has. The witness, George Bolan, called by the city, was asked: "Mr. Bolan, where do you live?" and his answer was: "222 Sycamore street." "Are you on Sycamore between Summit and Water streets?" "Yes, sir." And so it reads through the record.

No question was made at any time during the trial as to this being one of the streets of the city. The court charged the jury as though there was no question about it and no special exception was taken to it; we think a *prima facie* case was made here,

beyond question, that this was a street known as "Sycamore street." The witnesses testify, among other things, as to where it went—that it ran down to the Toledo furnaces and in the direction of the Vulcan Iron Works, and as to the number of people who travel on it down to the street below.

There was no denial of this, no effort on the part of the city to show that this was not a street, and, in the absence of any such evidence, it is clear to us that this does tend to establish the claim that this was a public street. It is not necessary to show that it had ever been dedicated or located as such by the city, but if used as a street for a long period of time, as this had been, apparently, and houses were built upon it, with numbers upon them, and having sidewalks upon it and people had been calling it a street, it is sufficient to establish the claim of the plaintiff that it was a public street, in the absence of evidence to the contrary; so that question may be passed without further discussion:

It is claimed and insisted upon by the city that the plaintiff was guilty of contributory negligence which caused or contributed directly to her injury, and that, therefore, she can not recover—her negligence consisting in her walking upon this walk without proper care. This walk had been laid along Sycamore street, apparently, a good many years ago, was a little out of repair, and for a portion of the way along the side of the street there was nothing but a cinder path. She came down from Summit street at the time in question and when she reached this strip of sidewalk, a man named Garrigan came up and offered to carry her basket of provisions, and she permitted him to do so; and they walked along the street together until he stepped upon a loose board, which flew up and tripped her down. This walk was in bad repair. The stringers were rotten; the nails were loose; the boards perhaps loose. As they lay upon the stringers, it would be impossible to tell from their appearance whether they were loose or not. Some few of them were out, but not very many. The evidence does not disclose what the condition of the street was along there—the roadway at the side of the walk—whether it was passable for walking upon, but we understand the law to that, that one is not required to leave

the sidewalk and walk in the road because the sidewalk is out of repair.

It is the duty of the city to keep the sidewalks in reasonable repair and citizens traveling upon the streets have a right to walk upon them and that is not contributory negligence; it does not constitute contributory negligence, alone, for one to walk upon a sidewalk that is out of repair; for, if that was the law—if all the sidewalks in the city were in such bad condition as to make them dangerous—it would afford practically complete protection to the city, if it were true that one who walked on such a sidewalk could be found guilty of contributory negligence.

But we think the court charged the jury correctly upon that proposition: that one knowing the sidewalk to be somewhat out of repair, may walk upon it, but he must use care commensurate with the danger of walking upon the walk; he must, under the circumstances use what would be ordinary care. If some of the boards are out, and he knows it, he must look out for them, or if some of the boards are loose, and he knows it, he must use care according to his situation. The evidence does not show that Mrs. Fuller was walking in a careless manner upon this walk. She testifies that she was walking along and looking out; that she did not know that these boards were loose at this particular point. Apparently, she was walking along as well as she could, upon this day. She was asked, upon cross-examination, if she was exercising the same care that she had exercised when she was walking upon Summit street, and she says she did, and it is urged that this shows that she was guilty of negligence, as it is said she ought to have exercised greater care in walking upon this sidewalk which was so much out of repair.

That, however, was simply a remark of hers in answer to a question put by counsel. She was an uneducated woman, in the ordinary walk of life, making her living as a cook and living down on this street with this dilapidated walk, and probably did not comprehend the full import of the question, put as it was, and answered it as she did without consideration, and we do not think that should be taken as proving absolutely that she was guilty of contributory negligence—that fact is to be determined by the evidence and by the manner in which she was in fact walking upon this sidewalk according to the testimony.

She was not required to walk in the road, where the Supreme Court has held that pedestrians ought not to walk; she was not required, as a matter of law, to get off the sidewalk. She was apparently doing the best she could. She says she did not know that these boards were loose, and she probably would not have been thrown down if it had not been for the man walking with her stepping upon the board and tipping it up, which is quite a common way of being tripped up and thrown down. We are unable to find, upon reviewing the case, that she should be held to have been guilty of such negligence as would preclude a recovery for her injuries. We do not cite any authorities upon this question. The law of contributory negligence is well established in these cases and they are governed by well-known principles of law. If she was conducting herself as an ordinarily prudent person would under the same or similar circumstances, that was sufficient, and we can not say that she was not.

It is said that the damages awarded by the jury are excessive, and evidently appear to have been given under the influence of prejudice or passion. Quite a large number of physicians were called to testify in the trial. Soon after she was hurt she was taken to the hospital, and she claims that her shoulder was injured and also the bone at her elbow. The evidence shows that she fell very violently and that the bone in her elbow, known as the olecranon process, as one doctor says, at the angle of the elbow, was fractured. She also claims that her hand was injured. Since her injury and at the trial, she was unable to open and close her hand—the fingers were stiffened. Her arm is injured, the elbow being stiffened so that she is unable to straighten the arm, which has to be kept at an angle. It was urged by the city that the evidence shows that she had injured her wrist when she was a child. She denied that she had done so or that her arm had ever been injured before; and it is urged that the stiffening of the fingers and of the hand could not have been produced by the injury at her elbow.

The evidence showed that she had sustained a very severe injury. This bone at the elbow was fractured; all, practically, agree upon that. Her arm had to be put in a plaster cast and kept there for several weeks. Since that time she has practically lost the use of her arm and hand, for the reasons that I have

given. It is said that if she had moved her fingers and hand while the arm was in the cast, that they would not have become stiffened by anchylosis, as it is called, which, the doctors say, comes largely from non-use of the hands in case of a fracture or injury. The doctor who treated her testifies that he instructed her to move her fingers and hand. She differs with him somewhat. But we think she may not have done all that she might have done to move her hand, and the doctor at the hospital may not have instructed her as fully as he should.

However, she is now in this condition as the result of this injury. The use of her arm is practically lost. She is now at the poor house; was at the time the case was being tried and has been there for some time. She had been earning small wages, $2 to $2.50 per week, at cooking. She earned enough to support herself and enable her to rent her humble rooms on this street and to get her food. It looks as though she would never again be able to provide for herself in this way—as though she is practically deprived of ability to perform manual labor in the manner in which she had been accustomed to. She has suffered a great deal of pain on account of this injury. The question of damages has been argued very fully by counsel for the city, and, therefore, I have discussed it somewhat; but, after looking through the testimony, we are unable to say that the jury were influenced by prejudice or passion or that this verdict for $1,000 is excessive. It does not seem to us that it is more than she is entitled to for the injury which she has sustained. She has lost her independence which she had before in life; she has become a dependent. To be sure she is in the poor house at the expense of the public, but that does not deprive her of her right to recover for damages which she has sustained. We can not find, therefore, that the amount allowed by the jury and the amount of the judgment is excessive, under the testimony.

No objection is made to the charge and no other objections are made than those I have mentioned. We find no error in the record of the case; the judgment, therefore, will be affirmed.

*U. G. Denman,* City Solicitor, and *C. K. Friedman,* Assistant City Solicitor, for plaintiff in error.

*L. H. Wilkinson* and *G. W. Kinney,* for defendant in error.